United States District Court
Southern District of Texas
**ENTERED**
December 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHAD ANDERSON, TDCJ #01713493,    §
                                  §
          Plaintiff,              §
                                  §
v.                                §    CIVIL ACTION NO. H-23-0538
                                  §
BRYAN COLLIER, et al.,            §
                                  §
          Defendants.             §

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Chad Allen Anderson (TDCJ #01713493), has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 8), along with exhibits (Docket Entry No. 9), against several prison officials employed by the Texas Department of Criminal Justice ("TDCJ") for infringing upon or failing to accommodate his religious beliefs. Anderson is housed at the Pack Unit. Anderson represents himself and he has been granted leave to proceed in forma pauperis (Order Granting Motion to Proceed In Forma Pauperis, Docket Entry No. 15). At the court's request he has provided a [More] Definite Statement of the Facts ("Plaintiff's MDS") (Docket Entry No. 19). Anderson has sued: (1) C.F. Hazelwood, TDCJ Director of Religious Services; (2) Moises Villalobas, Jr., Warden at the Pack Unit; (3) Bryan Collier, TDCJ's Executive Director; (4) Dana C. Sullivan, Assistant Warden at the Pack Unit; (5) Rowdy D. Daigle, former Chaplain at the Pack Unit; (6) Kyla E. Rosario, grievance investigator;

(7) Sheila Torres, correctional officer; (8) Sekou Dolly, correctional officer; (9) Brian Sullivan, correctional officer; (10) Major Clarence Houston; and (11) Unknown Members of the Religious Practice Committee.[1]

Now pending before the court is Hazelwood's Motion to Dismiss Case as Moot Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Hazelwood's MTD") (Docket Entry No. 41). Anderson has filed a response titled "Plaintiff's Memorandum i[n] Response to Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction" ("Anderson's Response") (Docket Entry No. 45); Hazelwood has filed Defendant's Motion to Strike and, Alternatively, Reply to Plaintiff's Memo in Response to Defendant's Motion to Dismiss ("Hazelwood's Reply") (Docket Entry No. 46); and Anderson responded with Plaintiff's Motion to Strike and, Alternatively, Re[ply] to Defendant's Strike and[,] Alternatively, Motion to Dismiss Defendant's Motion to Dismiss ("Anderson's Sur-reply") (Docket Entry No 48).

After considering the pleadings, the motions, the exhibits, and the applicable law, the court will grant, in part, Hazelwood's MTD for the reasons set forth below. The court will also dismiss the claims against Daigle, Dana Sullivan, Villalobas, Rosario, Torres, Dolly, Houston, Brian Sullivan, and Unknown Members of the

---

[1]Complaint, Docket Entry No. 8, pp. 3, 5, 6. For purposes of identification, all page numbers refer to the pagination imprinted by the courts Electronic Case Filing system.

Religious Practice Committee.  The plaintiff's other claims remain pending for adjudication.

## I.  Background

Anderson is incarcerated by TDCJ at the Pack Unit in Navasota.[2] Anderson identifies as a Yahweist/Sabbatarian.[3] As part of his religious beliefs, he observes the Sabbath on Saturday.[4]  He alleges that he has been denied the right to participate in services and practices observed by his religion.[5]  The only relief Anderson seeks is several forms of injunctive relief.    In particular, he seeks:

- Fast days with a meal to break the fast

- A "complete Sabbath service" during the eve of Sabbath or the day of Sabbath

- Seder meal ceremony during Passover

- Use of copyrighted materials, such as DVDs and CDs

- A cleansing shower on Sabbath and every Holy Day prior to religious services

- Two-hour Sabbath services "with or without same faith volunteer"

- A four- to six-hour Passover ceremony with kosher food or a meal for Holy Days

---

[2] Complaint, Docket Entry No 8, p. 3.

[3] Plaintiff's MDS, Docket Entry No. 19, p. 1 ¶ 3.

[4] Complaint, Docket Entry No. 8, p. 7.

[5] See generally id. at 4, 7.

- Use of a Shofar (ram horn) for Sabbath services and Holy Days

- A lay-in for certain Holy Days (Yahweh's Lunar New Moon, Day of First Fruits, Passover, Unleaven[ed] Bread, Feast of Weeks, Pentecost/Shavuot, Tishrei, Feast of Trumpets, Feast of Tabernacles, and The Last Great Day)[6]

Anderson claims that he was denied Saturday Sabbath services for several months due to a lack of chaplaincy staff.[7] He also claims that he was prohibited from participating in the Seder meal on March 28-29, 2021, April 15-16, 2022, and March 31-April 1, 2023.[8]

Invoking 42 U.S.C. § 1983, Anderson claims that the defendants violated his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). After Anderson provided answers to a court-ordered more definite statement, the court ordered service of the pleadings on Hazelwood.[9]

Hazelwood has now filed a motion to dismiss under Rule 12(b)(1).[10] Hazelwood's MTD addresses only two of Anderson's

---

[6] Id. at 4, 7.

[7] Plaintiff's MDS, Docket Entry No. 19, p. 4 ¶¶ 4(b),(c); see also Complaint, Docket Entry No. 8, p. 3 ¶ IV.B.-Defendant #5.

[8] Plaintiff's MDS, Docket Entry No. 19, p. 5 ¶ 5(b).

[9] Order for More Definite Statement, Docket Entry No. 16; Plaintiff's MDS, Docket Entry No. 19; and Order and Request for Answer, Docket Entry No. 20. The remaining defendants were not ordered to answer at that time. See Order and Request for Answer, Docket Entry No. 20, p. 2.

[10] Hazelwood's MTD, Docket Entry No. 41.

-4-

claims — namely, that he is being denied weekly Sabbatarian services and participation in the Seder meal during Passover.[11] Hazelwood argues that because the Pack Unit held a Seder meal service this past year and now offers a weekly Sabbatarian service, these claims are moot.[12] Anderson has replied,[13] Hazelwood has filed a response,[14] and Anderson has filed a sur-reply.[15]

## II.  <u>Standards of Review</u>

The current procedural posture of this case requires the court to apply two different legal standards to evaluate Anderson's claims.  First, the court applies the standard found in Rule 12 of the Federal Rules of Civil Procedure to Hazelwood's MTD.  Second, the court applies the standard in 28 U.S.C. § 1915(e)(2)(B) to determine whether Anderson has stated cognizable claims against Villalobas, Rosario, Torres, Dolly, Brian Sullivan, Houston, and "Unknown Members of the Religious Practice Committee."

## A.  **Motion to Dismiss Under Rule 12(b)(1)**

Hazelwood has moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  Federal courts are "courts of limited jurisdiction,

---

[11] <u>Id.</u> at 3–6.

[12] <u>See id.</u> at 3–6.

[13] Anderson's Response, Docket Entry No. 45.

[14] Hazelwood's Reply, Docket Entry No. 46.

[15] Anderson's Sur-reply, Docket Entry No. 48.

-5-

having only the authority endowed by the Constitution and that conferred by Congress." Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010) (quoting Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1, 665 F.2d 594, 595 (5th Cir. 1982)) (internal quotation marks omitted). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" Smith v. Regional Transit Authority, 756 F.3d 340, 347 (5th Cir. 2014) (quoting Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court may find lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); Stiftung v. Plains Marketing, L.P., 603 F.3d 295, 297 (5th Cir. 2010). The party seeking to assert jurisdiction bears the burden of proving its existence. Stiftung, 603 F.3d at 297.

When a case becomes moot the court lacks subject-matter jurisdiction. See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013). "Although voluntary cessation of a challenged activity does not ordinarily deprive a federal court of its power

-6-

to determine its legality, courts are justified in treating a voluntary governmental cessation of potentially wrongful conduct with solicitude." <u>Turner v. Texas Department of Criminal Justice,</u> 836 F. App'x 227, 229 (5th Cir. 2020) (citing <u>Sossamon v. Lone Star State of Texas,</u> 560 F.3d 316, 325 (5th Cir. 2009)). "Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." <u>Id.</u> (citing <u>Ragsdale v. Turnock,</u> 841 F.2d 1358, 1365 (7th Cir. 1988)). "Government actors in the exercise of their official duties are accorded a presumption of good faith because they are public servants, and without evidence to the contrary, courts assume that formally announced changes to official policy are not mere litigation posturing." <u>Id.</u> (citing <u>Sossamon,</u> 560 F.3d at 325).

## B.    The PLRA and <u>Pro Se</u> Pleadings

Because Anderson is an inmate who has been granted leave to proceed <u>in forma pauperis,</u> the PLRA requires the court to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See Rogers v. Boatright,</u> 709 F.3d 403, 407 (5th Cir. 2013). When considering whether the plaintiff has adequately

-7-

stated a claim on which relief may be granted, the court examines whether the complaint contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true[,]" and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." Harrington v. State Farm Fire & Casualty Co., 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citations omitted).

In reviewing the pleadings, the court is mindful that the plaintiff represents himself. Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (per curiam) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers).

### III.  Discussion

A.  **Hazelwood's MTD**

Anderson claims that his rights under the First Amendment to the United States Constitution and RLUIPA have been violated. The Supreme Court has interpreted the Free Exercise Clause of the First

-8-

Amendment to require that prisoners be afforded a "reasonable opportunity" to exercise their religious beliefs. <u>See</u> <u>Cruz v. Beto</u>, 92 S. Ct. 1079, 1081 n.2 (1972) (per curiam). At the same time, the Court recognized that "prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." <u>Id.</u> at 1081. Prison officials may place limits on the religious rights of prisoners as long as the regulations are "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 107 S. Ct. 2254, 2261 (1987); <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 484 (5th Cir. 2004) (citing <u>Turner</u>, 107 S. Ct. at 2261).

"RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." <u>Mayfield v. Texas Department of Criminal Justice</u>, 529 F.3d 599, 612 (5th Cir. 2008). RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of [an inmate] . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). To prevail on a claim under RLUIPA "the plaintiff bears the initial burden of proving that the challenged

government action substantially burdens the plaintiff's religious exercise." DeMoss v. Crain, 636 F.3d 145, 150 (5th Cir. 2011) (per curiam) (internal quotation marks and citation omitted).

"A governmental action creates a substantial burden on a religious exercise if it truly pressures the offender to significantly modify his religious behavior and significantly violates his religious beliefs." Turner, 836 F. App'x at 230 (citing Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)). "If the plaintiff meets this burden of proof, the burden shifts to the government to demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." DeMoss, 636 F.3d at 150 (internal quotation marks and citation omitted).

In his motion to dismiss, Hazelwood argues that Anderson's claims that he is being denied weekly Sabbatarian services and participation in the Seder meal are now moot because the Pack Unit hosts a weekly hour-long religious service on Saturdays for Sabbatarians, and the Pack Unit hosted a seder meal during Passover in 2024.[16]

In support of the motion, Hazelwood has attached an affidavit from Jeb Stewart Dotson, the current chaplain at the Pack Unit.[17]

---

[16] Hazelwood's MTD, Docket Entry No. 41, p. 2.

[17] See Corrected Affidavit of Chaplain Jeb Stewart Dotson, Exhibit C to Hazelwood's MTD, Docket Entry No. 43. When considering a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings, including affidavits, to resolve disputed jurisdictional facts. See Moran v. Kingdom of Saudi Arabia, 27

(continued...)

-10-

Chaplain Dotson states that he has been the chaplain at the Pack Unit since September 20, 2023.[18]  He testifies that Sabbatarians have a "weekly primary Saturday services that are inmate-led for one hour" and that if "a faith group has an approved outside volunteer, then that group may request two (2) hours a week for religious programming."[19]  On April 23, 2024, Chaplain Dotson hosted and led a seder for inmates who identified as either Sabbatarian or Jewish.[20]  Chaplain Dotson states that to his knowledge the Pack Unit has not previously hosted a seder during Passover for Jewish inmates "or any of the [other] inmates who observe this holiday."[21] Prior to April 23 Chaplain Dotson personally invited Anderson to attend the upcoming Passover seder.[22]  Dotson describes his conversation with Anderson on the matter as follows:

> Prior to April 23, I gave Mr. Anderson a personal invitation to the seder.  His response was, "since I am in the middle of a lawsuit, I do not want to attend the seder.  I will wait for a ruling on this legal case."  I told him that I understood and that I did not want him to be left out.  Furthermore, I reminded him that he was always welcome to attend the Sabbatarian services and

---

[17](...continued)
F.3d 169, 172 (5th Cir. 1994); <u>Adams v. Pearl River Valley Water Supply District</u>, No. 21-60749, 2022 WL 2829756, at *2 (5th Cir. July 20, 2022) (per curiam).

[18] <u>See</u> Corrected Affidavit of Chaplain Jeb Stewart Dotson, Exhibit C to Hazelwood's MTD, Docket Entry No. 43, p. 2.

[19] <u>Id.</u> at 3 ¶ 8.

[20] <u>Id.</u> ¶ 13.

[21] <u>Id.</u>

[22] <u>Id.</u> ¶ 15.

holy day celebrations.  I made sure he understood that he
should let me know if he changed his mind about attending
this year's Seder meal.  He thanked me and that was the
end of our conversation about the Seder.[23]

Chaplain Dotson explains that most inmates request a lay-in — which
once approved, excuses an inmate from performing work or attending
school — for a holy day observed by their religious faith.[24]
Anderson did not request a lay-in for Passover in 2024.[25]  Dotson
states that "as long as there is time, space[,] and an interest, I
plan to continue hosting a seder during Passover for the religious
groups that observe this holiday."[26]

Hazelwood has also submitted the Pack Unit Weekly Religious
Programming Schedule as evidence.[27]  The schedule shows that a
Sabbatarian service is scheduled for every Saturday from 12:00 p.m.
to 1:00 p.m.[28]  Chaplain Dotson states that Anderson has not
attended the weekly Sabbatarian services since December of 2023.[29]

In his response Anderson does not dispute that a Seder meal
ceremony was offered at the Pack Unit in 2024.[30]  Instead, Anderson

---

[23] Id.

[24] See id. at 2 ¶ 4, 4 ¶ 16.

[25] Id. at 4 ¶ 16.

[26] Id. ¶ 17.

[27] See Pack Unit Weekly Religious Programing, Exhibit B to
Hazelwood's MTD, Docket Entry No. 41-2.

[28] Id.

[29] Corrected Affidavit of Chaplain Jeb Stewart Dotson,
Exhibit C to Hazelwood's MTD, Docket Entry No. 43, p. 4.  Dotson's
affidavit is dated June 17, 2024.

[30] Anderson's Response, Docket Entry No. 45, pp. 5-6.

-12-

takes issue that Chaplain Dotson, who apparently follows the Christian faith, led the Passover Seder.[31] Anderson asserts that it is against his religious beliefs for a "non-denominational Christian chaplain" to hold the Seder meal.[32] Anderson posits that the Seder meal should instead be lead by a volunteer who practices the Sabbatarian faith or inmates should receive a "Seder plate cell side to hold a Seder meal service on their own[.]"[33]

Although Anderson takes issue with how the Seder Passover meal was served, he does not dispute that it was offered. That a non-Sabbatarian practitioner led the Seder meal does not violate Anderson's rights because "prisoners do not have a right to the religious advisor of their choice." Turner, 836 F. App'x at 230 (citing Blair-Bey v. Nix, 963 F.2d 162, 163-64 (8th Cir. 1992)); see also Blair-Bey, 963 F.2d at 163 ("The Constitution does not require that a religious advisor be provided for every sect represented in a penitentiary. Nor does the Constitution require that prisoners be provided the religious advisor of their choice or one that belongs to their individual religious sect.") (emphasis supplied) (internal citations omitted); Boughton v. Geo Group Inc., No. 1:20-cv-938 (TSE/JFA), 2023 WL 1970365, at *8 (E.D. Va. Feb. 10, 2023) ("RLUIPA does not require that prisons provide offenders with the 'religious advisor of their choice.'") (citation omitted).

---

[31] Id. at 6.

[32] Id.

[33] Id.

As for his claim concerning weekly Sabbatarian services, Anderson does not present any evidence that disputes Chaplain Dotson's affidavit that the Pack Unit now offers a weekly Sabbatarian service.

For these reasons the plaintiff's claims addressed in Hazelwood's MTD — that Anderson is being denied weekly Sabbatarian services and participation in the Seder meal during Passover — will be dismissed as moot. See Turner, 836 F. App'x at 229 (affirming dismissal of an inmate's religious claim when TDCJ changed prison policy and the inmate had "received what he wanted"); Molinar v. Lumpkin, Civil Action No. 6:22-CV-00006, 2023 WL 6221786, at *3 (S.D. Tex. Sept. 23, 2023) (dismissing an inmate's claim to wear his hair in two braids as an expression of his religious faith when TDCJ changed policy and permitted the inmate the relief he sought).

## B.   The Claims Against Chaplain Rowdy Daigle and Assistant Warden Dana Sullivan

As noted above, Chaplain Dotson is the current chaplain at the Pack Unit.[34] Because Anderson seeks only injunctive relief against Daigle and Daigle is not the current chaplain at the Pack Unit, the claims against Daigle will be dismissed under Rule 12 of the Federal Rules of Civil Procedure as moot. See Turner, 836 F. App'x at 229 (affirming dismissal of the plaintiff's claim because the claim became moot).

---

[34] See Corrected Affidavit of Chaplain Jeb Stewart Dotson, Exhibit C to Hazelwood's MTD, Docket Entry No. 43, p. 2 ¶ 2.

-14-

Anderson alleges that Assistant Warden Sullivan "chose to deliberately show indifference in the way his unit is r[u]n."[35] Anderson asserts that he contacted Assistant Warden Sullivan "about problems of not being able to celebrate Passover with Seder meal service[.]"[36]  When asked to provide more details about his claim that he contacted Sullivan about celebrating Passover with a Seder meal service, Anderson states that he contacted Sullivan via Grievance #2023062849 on February 27, 2023.[37]  Anderson asserts that he received the following in response:

> Investigation into you[r] allegations has been initiated by this office.  It was determined you met with Chaplain Daigle on 02/06/23 and filled out the HQ-150 for Seder meal during Passover.  There is no evidence of policy violations and/or employee misconduct.  No further action is warranted by this office.[38]

To the extent Anderson is claiming that Assistant Warden Sullivan is infringing on his rights by denying him a Seder meal service during Passover, such claim is now moot.  Thus, the claims against Assistant Warden Sullivan will be dismissed under Rule 12 of the Federal Rules of Civil Procedure as moot.  See Turner, 836 F. App'x at 229.

## C.    The Claims Against Other Defendants

Anderson has also sued Rosario, Torres, Houston, Villalobos, Dolly, Brian Sullivan, and "Unknown Members of the Religious Practice Committee."  The court did not order service on these

---

[35] Complaint, Docket Entry No. 8, p. 5 ¶ 4.

[36] Id.

[37] Plaintiff's MDS, Docket Entry No. 19, p. 7.

[38] Id. at 7-8 ¶ 8.

-15-

defendants and instead examines whether the claims against these defendants are appropriately dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

As discussed in Part I, Anderson seeks various forms of injunctive relief. As a general matter, he asserts that only certain of the defendants have the authority to effect the relief he seeks. In the Plaintiff's MDS, he identifies Collier, Hazelwood, and Chaplain Daigle (or his successor, who would be Chaplain Dotson) as the only defendants who can provide the relief he seeks.[39] Thus, because Anderson only seeks injunctive relief and has identified these defendants as the ones having the sole authority to give him the relief he seeks, the claims against Rosario, Torres, Houston, Villalobos, Dolly, Brian Sullivan, and "Unknown Members of the Religious Practice Committee" must be dismissed for this reason alone. Additionally, as will be discussed below, the claims against these defendants must also be dismissed under 28 U.S.C. § 1915(e).

### 1. Grievance Investigator Kyla Rosario

Anderson alleges that Grievance Investigator Rosario "inflict[ed]" torture on him by "fail[ing] to interpret clear and

---

[39] See Plaintiff's MDS, Docket Entry No. 19, p. 16 ¶ 14.

-16-

concise [E]nglish used in the Grievance operational manuel [sic] with the assorted Appe[n]dix."[40]   He claims that her "impartial, unbias[ed] Investigation techniques allowed the continual emotional and mental abuse" by other TDCJ employees.[41]

Anderson's claim that Rosario failed to properly investigate or respond to his grievance must be dismissed because it fails to state a claim on which relief may be granted.  The Fifth Circuit has held that a prisoner's claim that his grievances were improperly investigated and denied is properly dismissed because a prisoner "'does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction.'"  Schwarzer v. Wainwright, 810 F. App'x 358, 360 (5th Cir. 2020) (per curiam) (quoting Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)). Likewise, a state prisoner cannot demonstrate that he has a constitutional right to a grievance system.  See Schwarzer, 810 F. App'x at 360; see also Morris v. Cross, 476 F. App'x 783, 785 (5th Cir. 2012) (per curiam) (finding that an inmate's claim that he was denied adequate investigation into his grievance was properly dismissed as frivolous under 28 U.S.C. § 1915A(b)(i)).

Anderson's claims against Kyla Rosario will be dismissed under § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief can be granted.

---

[40] Id. at 8 ¶ 9.

[41] Id.

-17-

## 2.   Officer Sheila Torres

In the Complaint, Anderson alleges that Torres forced him to work "above and beyond policy" due to his religious beliefs.[42]   When asked to provide more details about this claim, Anderson alleges that on October 3, 2021, Torres "started harassing [me] with disparaging comments about my belief and saying 'if she had to work so do I.'"[43]   Despite Anderson telling Torres that he had a lay-in, or work proscription, Torres made him clean anyway.[44]

This claim must be dismissed because Anderson has not alleged specific facts that demonstrate that Torres was forcing him to work "above and beyond policy" because of his religious beliefs. Anderson merely claims that Torres made disparaging comments "about my belief" but he does not describe the comments Torres allegedly made, or even that the comments were directed at his religious beliefs.[45]   Anderson does not allege that Torres knew that his work proscription was religiously related.[46]   A plaintiff must explain or identify specific facts in support of their claims.   See Ashcroft, 129 S. Ct. at 1949.   Allegations devoid of specific facts are not sufficient to sustain a claim of a constitutional violation under § 1983.   See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.

---

[42] Complaint, Docket Entry No. 8, p. 5 ¶ 9.

[43] Plaintiff's MDS, Docket Entry No. 19, p. 8 ¶ 10(c).

[44] Id.

[45] Id. at 8-9 ¶ 10(d).

[46] Id.

-18-

1995) (explaining that a § 1983 plaintiff must file a "short and plain statement of his complaint . . . that rests on more than conclusions alone"); <u>Fernandez-Montes v. Allied Pilots Assoc.</u>, 987 F.2d 278, 284 (5th Cir. 1993) (explaining that conclusory allegations will not suffice to prevent dismissal for failure to state a claim); <u>Ashcroft,</u> 129 S. Ct. at 1949 (explaining that a complaint does not state a claim for relief if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting <u>Bell Atlantic Corporation v. Twombly,</u> 127 S. Ct. 1955, 1966 (2007)).

Moreover, the use of disparaging language, insults, or threats does not rise to the level of a constitutional claim. <u>See, e.g.,</u> <u>Bender v. Brumley,</u> 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); <u>Calhoun v. Hargrove,</u> 312 F.3d 730, 734 (5th Cir. 2002) (holding that an inmate's claims of verbal abuse are not actionable under § 1983); <u>Jensen v. Staples,</u> Civil Action No. H-09-3551, 2010 WL 3463376, at *5 (S.D. Tex. Aug. 31, 2010) ("However offensive a correctional officer's words may be, it is well established that verbal insults or epithets in the prison context do not amount to a constitutional violation and are not actionable under 42 U.S.C. § 1983.") (citations omitted).

Anderson's claims against Sheila Torres will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

### 3.    Major Clarence Houston

In the Complaint, Anderson alleges that Major Houston allowed "burden, torture and abuse" by subordinates in connection with two grievances filed by Anderson.[47]  When asked to clarify his claims against Major Houston, Anderson alleges that "[u]pon being informed of Grievance #2023012258, [i]t seems that [Houston] deliberately chose to retaliate against . . . me, either himself by way of threats and bodily threats, or through correctional officers[] (by writing me up or treating my fellow dorm mates badly and telling them it was due to me)."[48]  He also alleges that Houston continues to assign him "extra-hours work" that requires him to work on his Sabbath.[49]  He alleges that Major Houston yelled at him, used "abusive cursing language towards [him]," and physically threatened him.[50]

In the event Anderson is bringing a retaliation claim, he has failed to state a claim on which relief may be granted.  "'To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008) (quoting Jones v.

---

[47] See Complaint, Docket Entry No. 8, p. 6 ¶ VI.B.-Defendant #11.

[48] Plaintiff's MDS, Docket Entry No. 19, pp. 9-10 ¶ 11(a).

[49] Id. at 10 ¶ 11(a).

[50] Id. ¶ 11(b).

Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam)). An inmate must allege more than his personal belief that he is the victim of retaliation. See Jones, 188 F.3d at 325 (citing Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate that a defendant acted with intent to retaliate, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted).

Anderson appears to allege that when Houston was told that Anderson had filed two grievances, Houston then threatened him and/or told other correctional officers to write up Anderson. The Fifth Circuit has "consistently rejected threat-based retaliation claims" like the one Anderson asserts here. See Gibson v. Jean-Baptiste, No. 18-50844, 2020 WL 2078307, at *1 (5th Cir. Apr. 29, 2020) (per curiam) (citing cases). "[A]s a rule, mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (internal quotation marks and citation omitted); see also Larson v. Westbrook, 799 F. App'x 263, 264, 2020 WL 1540331 (5th Cir. 2020) (per curiam) (holding that "verbal threats and threatening gestures, standing alone, do not amount to a constitutional violation") (citations omitted). Anderson also fails to allege direct evidence of motivation or allege a chronology of events from which retaliation may plausibly

-21-

be inferred. To that end, he does not state when Houston was told that Anderson filed grievances; nor does he allege facts which demonstrate intent on the part of Houston to retaliate against him. Merely being told that Anderson filed grievances does not show evidence of intent to retaliate on Houston's part. Finally, the use of disparaging language, insults, or threats does not rise to the level of a constitutional claim. See, e.g., Bender, 1 F.3d at 274 n.4; Calhoun, 312 F.3d at 734; Jensen, 2010 WL 3463376, at *5.

Anderson's claims against Clarence Houston will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

### 4. Warden Moses Villalobas, Jr.

Anderson alleges that Villalobas "approached him" about grievances he filed and "smiled" about a grievance related to Anderson's Sabbath Day.[51] These allegations about Warden Villalobas fail to show that Villalobas violated Anderson's constitutional or statutory rights in any way. To state a claim for relief, a plaintiff must plead facts that show that he is entitled to relief under a valid legal theory. See Brock v. Cruz, 357 F. Supp. 3d 581, 585 (S.D. Tex. 2019) (citing Neitzke v. Williams, 109 S. Ct. 1827 (1989) and McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). A claim is frivolous if it lacks any arguable basis in law or fact. Samford v. Dretke, 562 F.3d 674, 678 (5th Cir. 2009). "A

---

[51] See id. at 15.

-22-

complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory . . . . " <u>Rogers,</u> 709 F.3d at 407 (citation omitted).

Because the claims against Warden Villalobas are based on an indisputably meritless legal theory, the claims will be dismissed under § 1915(e)(2)(B)(i) as frivolous.

### 5.   Lieutenant Sekou Dolly

Anderson claims that Lieutenant Dolly used "abusive and degrading language when he stopped the disciplinary cassette tape in his hearing for Major case #2023075380."[52]

As discussed above, the use of disparaging language, insults, or threats does not rise to the level of a constitutional claim. <u>See, e.g., Bender,</u> 1 F.3d at 274 n.4; <u>Calhoun,</u> 312 F.3d at 734; <u>Jensen,</u> 2010 WL 3463376, at *5.

Anderson's claims against Sekou Dolly will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

### 6.   Lieutenant Brian K. Sullivan

When asked to provide further facts about his claim against Lieutenant Sullivan, Anderson responded:

> During the investigation of [grievance #202219756] Defendant Sgt. Sullivan came to my housing area.  In which time [sic] removed me and took me to Lt. office where he physically handcuffed me for explaining the situation with officer Torres because I said "my life was in danger." [A]nd he refused along with Lt. Dolly to

---

[52] <u>Id.</u> at 16.

-23-

informally resolve the situation. And allowed officer Torres to write me a case against my religious belief forcing me to work on my Sabbath.[53]

To the extent that Anderson is alleging that Sullivan failed to follow TDCJ policy by "refusing to informally resolve the situation," such allegation does not state a claim for relief. Mere failure of prison officials to follow prison policy or rules does not amount to a constitutional violation. See McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012) ("An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim.") (citing Jackson v. Cain, 864 F.2d 1235, 1251-52 (5th Cir. 1989)); Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not a constitutional violation.") (citation omitted).

And, to the extent that Anderson is claiming Sullivan violated his First Amendment rights, Anderson does not allege any facts that indicate that Sullivan was aware that Anderson followed a particular religious tradition, let alone that Sullivan was aware that it was against Anderson's religious beliefs to work on his Sabbath.

Anderson's claims against Brian Sullivan will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

7.   Unknown Members of the Religious Practice Committee

Anderson claims that "Unknown members of [the] Religious Practice Committee" "choose[] to enact policies for Yahweist/

---

[53] Id. ¶ 13(e).

Sabbatrians [sic] without knowledge of Basic Tene[n]ts, causing irreparable harm and continued substantial Burdens."[54]

This claim must be dismissed because Anderson has not personally named any members of the Religious Practice Committee as defendants. See Colle v. Brazos County, Texas, 981 F.2d 237, 243 n.20 (5th Cir. 1993) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.") (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).  Further, his allegations are devoid of any specific facts and fail to state a claim on which relief may be granted. A plaintiff must explain or identify specific facts in support of his claims.  See Ashcroft, 129 S. Ct. at 1949.  Allegations devoid of specific facts are not sufficient to sustain a claim of a constitutional violation under § 1983.  See Schultea, 47 F.3d at 1433 (explaining that a § 1983 plaintiff must file a "short and plain statement of his complaint . . . that rests on more than conclusions alone"); Fernandez-Montes, 987 F.2d at 284 (explaining that conclusory allegations will not suffice to prevent dismissal for failure to state a claim); Ashcroft, 129 S. Ct. at 1949 (explaining that a complaint does not state a claim for relief if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting Twombly, 127 S. Ct. at 1966).

Anderson's claims against "unknown members of the Religious Practice Committee" will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted.

---

[54] Complaint, Docket Entry No. 8, p. 6 ¶ VI.B.-Defendant #10.

-25-

## IV.   Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1.   Hazelwood's Motion to Dismiss Case as Moot Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Docket Entry No. 41) is **GRANTED in part and DENIED in part**. The claims addressed in the motion — that Anderson is being denied weekly Sabbatarian services and participation in the Seder meal during Passover — are **DISMISSED as moot**.

2.   Anderson's claims against Rowdy Daigle and Dana C. Sullivan are **DISMISSED as moot**.

3.   Anderson's claims against defendants Kyla Rosario, Sheila Torres, Clarence Houston, Moises Villalobas, Jr., Sekou Dolly, and Brian K. Sullivan are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) as set forth above.

4.   Hazelwood's Motion to Strike and, Alternatively, Reply to Plaintiff's Memo in Response to Defendant's Motion to Dismiss (Docket Entry No. 46) is **DENIED**.

5.   Anderson's Motion to Strike and, Alternatively, Re[ply] to Defendant's Strike and[,] Alternatively, Motion to Dismiss Defendant's Motion to Dismiss (Docket Entry No. 48) is **DENIED**.

6.   To the extent he intended to file a motion for summary judgment, Anderson's Memorandum in Support of Motion for Summary Judgement (Docket Entry No. 37) is **DENIED without prejudice**.

7.   The stay of discovery deadlines entered in the Order of June 18, 2024 (Docket Entry No. 44), is **LIFTED**. To the extent that they have not already done so, the parties must comply with the discovery obligations set out in the court's Order and Request for Answer of October 2, 2023 (Docket Entry No. 20).

8.   **The parties shall have sixty (60) days from the date of this Memorandum Opinion and Order to file**

-26-

any other dispositive motions on the plaintiff's
remaining claims as set out in the pleadings.

The Clerk is directed to provide a copy of this Memorandum

Opinion and Order to the parties.

SIGNED at Houston, Texas, on this 5th day of December, 2024.

_____
                    SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-27-