United States District Court
Southern District of Texas

**ENTERED**

July 03, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD ANDERSON, TDCJ #01713493, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-0538 |
| | § | |
| BRYAN COLLIER, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Chad Anderson (TDCJ #01713493), has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 8), along with exhibits (Docket Entry No. 9), against several prison officials employed by the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ") for infringing upon or failing to accommodate his religious beliefs. Anderson is housed at the Pack Unit. Anderson represents himself and he has been granted leave to proceed _in forma pauperis_ (Docket Entry No. 15). At the court's request, Anderson has provided a "[More] Definite Statement of the Facts" ("Plaintiff's MDS") (Docket Entry No. 19). On December 5, 2024, the court issued a Memorandum Opinion and Order that dismissed as moot Anderson's claim that he was being denied weekly Sabbatarian services and participation in the Seder meal during Passover. (_See_ Docket Entry No. 49, p. 26.) The court also dismissed as moot the

claims against defendants Rowdy Daigle and Dana C. Sullivan. (See
id.) And the court dismissed with prejudice the claims against
defendants Kyla E. Rosario, Sheila Torres, Clarence Houston, Moises
Villalobas, Jr., Sekou Dolly, Brian K. Sullivan, and Unknown
Members of the Religious Practice Committee pursuant to 28 U.S.C.
§ 1915(e)(2)(B). (See id.) Remaining for adjudication are
Anderson's claims for injunctive relief against defendant C.F.
Hazelwood, Director of Religious Services for TDCJ.[1] Anderson
seeks:

- Fast days with a meal to break the fast

- Use of copyrighted materials, such as DVDs and CDs

- A cleansing shower on Sabbath and every Holy Day prior to
  religious services

- A meal for Holy Days

- Use of a shofar (a ram's horn) for Sabbath services and
  Holy Days

- A lay-in for Holy Days

(See Complaint, Docket Entry No. 8, pp. 4, 7; see also Order,
Docket Entry No. 51.)

Now pending before the court are two motions filed by
Hazelwood: (1) Defendant's Motion for Partial Dismissal of Case as

---

[1]As will be discussed later, Anderson also named TDCJ's
Executive Director Bryan Collier as a defendant. (See Complaint,
Docket Entry No. 8, p. 3.) The court did not request an answer
from Collier. (See Order and Request for Answer, Docket Entry
No. 20, p. 2 n.1.)

For purposes of identification, all page numbers refer to the
pagination imprinted by the courts Electronic Case Filing system.

Moot Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Hazelwood's Motion for Partial Dismissal") (Docket Entry No. 55); and (2) Defendant's Motion for Summary Judgment Limited to the Defense of Exhaustion of Administrative Remedies ("Hazelwood's MSJ") (Docket Entry No. 56). Anderson has not filed a response to either motion and the time to do so has expired. After considering the pleadings, the motions, the record, and the applicable law, the court will grant Hazelwood's Motion for Partial Dismissal and Hazelwood's MSJ. The court will also dismiss the claims against TDCJ Executive Director Bryan Collier. The reasons are explained below.

## I.  **Background**

Anderson is incarcerated by TDCJ at the Pack Unit in Navasota.[2] Anderson identifies as a Yahweist/Sabbatarian.[3] As part of his religious beliefs, he observes the Sabbath on Saturday.[4] He alleges that he has been denied the right to participate in services and practices observed by his religion.[5] The only relief Anderson seeks is several forms of injunctive relief. As noted above, the only claims that remain in this case are the following requests by Anderson:

---

[2]See Complaint, Docket Entry No. 8, p. 3.

[3]See Plaintiff's MDS, Docket Entry No. 19, p. 1 ¶ 3.

[4]See Complaint, Docket Entry No. 8, p. 7.

[5]See generally id. at 4, 7.

-3-

- Fast days with a meal to break the fast

- Use of copyrighted materials, such as DVDs and CDs

- A cleansing shower on Sabbath and every Holy Day prior to religious services

- A meal for Holy Days

- Use of a shofar for Sabbath services and Holy Days

- A lay-in for certain Holy Days (Yahweh's Lunar New Moon, Day of First Fruits, Passover, Unleaven[ed] Bread, Feast of Weeks, Pentecost/Shavuot, Tishrei, Feast of Trumpets, Feast of Tabernacles, and The Last Great Day)[6]

Invoking 42 U.S.C. § 1983, Anderson claims that the defendants violated his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). After Anderson provided answers to a court-ordered more definite statement, the court ordered service of the pleadings on Hazelwood.[7]

Hazelwood has now filed a Motion for Partial Dismissal of Case as Moot Pursuant to Federal Rule of Civil Procedure 12(b)(1).[8] Hazelwood argues that several of Anderson's remaining requests for injunctive relief are moot because the relief Anderson seeks is

---

[6]See id. at 4, 7.

[7]See Order for More Definite Statement, Docket Entry No. 16; Plaintiff's MDS, Docket Entry No. 19; Order and Request for Answer, Docket Entry No. 20. The remaining defendants were not ordered to answer at that time. See Order and Request for Answer, Docket Entry No. 20, p. 2 n.1.

[8]See Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55.

already offered to Sabbatarians, including Anderson.[9]  She argues
that the claims must be dismissed for lack of subject-matter
jurisdiction.[10]

She has also filed a Motion for Summary Judgment Limited to
the Defense of Exhaustion of Administrative Remedies.[11]  Hazelwood
argues that she is entitled to summary judgment because Anderson
did not exhaust administrative remedies with respect to any of his
remaining claims prior to filing suit, as required by the Prison
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  In support of
the motion, Hazelwood has attached Anderson's grievance records for
the period of August 1, 2022, to May 1, 2023,[12] and an affidavit
from Jessica Riley, a manager with TDCJ's Administrative Review and
Risk Management Division Inmate Grievance Program.[13]

Anderson has not filed a response to either motion.

## II.  **Standards of Review**

### A.  **Motion to Dismiss Under Rule 12(b)(1)**

Hazelwood has moved to dismiss under Rule 12(b)(1) of the
Federal Rules of Civil Procedure for lack of subject-matter

_____

[9]Id. at 4-8.

[10]Id. at 4-5.

[11]See Hazelwood's MSJ, Docket Entry No. 56.

[12]See Anderson Grievance File, Ex. A to Hazelwood's MSJ, Docket
Entry No. 56-1.

[13]See Affidavit of Jessica Riley, Ex. B to Hazelwood's MSJ,
Docket Entry No. 56-2.

-5-

jurisdiction. Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010) (quoting Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1, 665 F.2d 594, 595 (5th Cir. 1982)) (internal quotation marks omitted). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" Smith v. Regional Transit Authority, 756 F.3d 340, 347 (5th Cir. 2014) (quoting Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The party seeking to assert federal jurisdiction bears the burden of proving that subject matter jurisdiction exists." Stiftung v. Plains Marketing, L.P., 603 F.3d 295, 297 (5th Cir. 2010) (citation omitted).

When a case becomes moot the court lacks subject-matter jurisdiction. See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013). "Although voluntary cessation of a challenged activity does not ordinarily deprive a federal court of its power to determine its legality, courts are justified in treating a voluntary governmental cessation of potentially wrongful conduct with solicitude." Turner v. Texas Department of Criminal Justice, 836 F. App'x 227, 229 (5th Cir. 2020) (citing Sossamon v. Lone Star

<u>State of Texas,</u> 560 F.3d 316, 325 (5th Cir. 2009)).  "Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." <u>Id.</u> (citing <u>Ragsdale v. Turnock,</u> 841 F.2d 1358, 1365 (7th Cir. 1988)).  "Government actors in the exercise of their official duties are accorded a presumption of good faith because they are public servants, and without evidence to the contrary, courts assume that formally announced changes to official policy are not mere litigation posturing." <u>Id.</u> (citing <u>Sossamon,</u> 560 F.3d at 325).

**B.   Motion for Summary Judgment Under Rule 56**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also Celotex Corp. v. Catrett,</u> 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  <u>Anderson v. Liberty Lobby. Inc.,</u> 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  <u>Id.</u>

If the movant demonstrates an "'absence of evidentiary support in the record for the nonmovant's case[,]'" the burden shifts to the nonmovant to "come forward with specific facts showing that

-7-

there is a genuine issue for trial." <u>Sanchez v. Young County,</u> <u>Texas,</u> 866 F.3d 274, 279 (5th Cir. 2017) (citing <u>Cuadra v. Houston</u> <u>Independent School District,</u> 626 F.3d 808, 812 (5th Cir. 2010)); <u>see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio</u> <u>Corp.,</u> 106 S. Ct. 1348, 1356 (1986).  In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party[.]" <u>Dillon v. Rogers,</u> 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted).  Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." <u>Alexander</u> <u>v. Eeds,</u> 392 F.3d 138, 142 (5th Cir. 2004) (internal quotation marks omitted).  Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts. <u>See</u> <u>McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,</u> 66 F.3d 89, 92 (5th Cir. 1995).  Further, a court need not comb the record to find evidence that will permit a non-movant to survive summary judgment. <u>See Adams v. Travelers Indemnity Company of Connecticut,</u> 465 F.3d 156, 164 (5th Cir. 2006) (citing <u>Ragas v. Tennessee Gas</u> <u>Pipeline Co.,</u> 136 F.3d 455, 458 (5th Cir. 1998)).

### III.  <u>Discussion</u>

**A.   Hazelwood's Motion for Partial Dismissal**

Anderson claims that his rights under the First Amendment to the United States Constitution and RLUIPA have been violated.  The

-8-

Supreme Court has interpreted the Free Exercise Clause of the First Amendment to require that prisoners be afforded "reasonable opportunities" to exercise their religious beliefs. See Cruz v. Beto, 92 S. Ct. 1079, 1081 n.2 (1972) (per curiam). At the same time, the Court recognized that "prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." Id. at 1081. Prison officials may place limits on the religious rights of prisoners as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 107 S. Ct. 2254, 2261 (1987); Victoria W. v. Larpenter, 369 F.3d 475, 484 (5th Cir. 2004) (citing Turner, 107 S. Ct. at 2261).

"RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." Mayfield v. Texas Department of Criminal Justice, 529 F.3d 599, 612 (5th Cir. 2008). RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of [an inmate] . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To prevail on a claim under RLUIPA "the plaintiff bears the initial burden of proving that the challenged government action substantially burdens the plaintiff's religious exercise." DeMoss v. Crain, 636 F.3d 145, 150 (5th Cir. 2011) (per curiam) (internal quotation marks and citation omitted).

"A governmental action creates a substantial burden on a religious exercise if it truly pressures the offender to significantly modify his religious behavior and significantly violates his religious beliefs." Turner, 836 F. App'x at 230 (citing Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)). "If the plaintiff meets this burden of proof, the burden shifts to the government to demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." DeMoss, 636 F.3d at 150 (internal quotation marks and citation omitted).

In her Motion for Partial Dismissal, Hazelwood argues that the following claims are now moot because the relief sought is already offered to Sabbatarians, including Anderson:

- Fast days with a meal to break the fast

- Use of copyrighted materials, such as DVDs and CDs

- Use of a shofar for Sabbath services and Holy Days

- A lay-in for certain Holy Days[14]

---

[14]Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55, pp. 6-8.

The court examines each request in turn.

### 1.   Fast Days With A Meal to Break the Fast

Anderson has requested fast days with a meal to break the fast.[15]

Hazelwood argues that Anderson's request is moot because he is already offered the option to fast and break the fast with a meal.[16] In support of the Motion for Partial Dismissal, Hazelwood has attached an affidavit from Jeb Stewart Dotson, the current chaplain at the Pack Unit.[17]   Chaplain Dotson explains that under TDCJ policy, Sabbatarians have one holiday, the Day of Atonement, in which they can choose to fast and break that fast with a meal in the evening.[18]   The Sabbatarians who chose to fast on the Day of Atonement receive a sack meal, or "Johnny sack," because they break their fast after the dinner meal is normally served.[19]   If an inmate wishes to obtain special TDCJ approved food for a religious meal, the inmate may fill out an application.[20]   The applications are sent

---

[15]Complaint, Docket Entry No. 8, p. 4.

[16]Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55, pp. 6-7.

[17]See Affidavit of Chaplain Jeb Stewart Dotson ("Chaplain Dotson's Affidavit"), Exhibit C to Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55-3.

[18]Id. at 3 ¶ 8.

[19]Id. ¶ 9.

[20]Id. ¶ 14.

to the Sabbath Keepers Fellowship and Prison Ministry, which provides items to several different religious groups in prison (including the Sabbatarian faith) free of charge.[21]   An inmate who would like particular food for a religious meal may also purchase the food from the unit commissary.[22]  Chaplain Dotson testifies that in January of 2025 Anderson applied to Sabbath Keepers for Passover food supplies.[23]    Besides this application, Anderson has not submitted another application for supplies from Sabbath Keepers since Dotson arrived at the Pack Unit in September 2023.[24]

Chaplain Dotson further testifies that every year TDCJ publishes a document that lists all of the Holy/Observance Days for each religion that TDCJ recognizes.[25]   If an inmate wishes to observe a holiday that is not already recognized by TDCJ, then the inmate must make a written request by filling out a Request for Religious Accommodation form or an HQ-150 form.[26]  The chaplain of the unit then forwards the form to the Chaplaincy and Volunteer Services Division ("CVSD").[27]  The CVSD reviews and researches the

---

[21] Id.

[22] Id.

[23] Id. ¶ 15.

[24] Id. at 2 ¶ 2; p. 3 ¶ 15.

[25] Id. at 3 ¶ 10.  TDCJ recognizes over 400 religious subsets of 10 different broad faith categories.  Id. at 2 ¶ 5.

[26] Id. at 3 ¶ 12.

[27] Id.

-12-

request, and then either approves or denies the request.[28] The CVSD informs both the chaplain and the inmate who made the request of the CVSD's findings.[29] Chaplain Dotson testifies that since he began working at the Pack Unit in September of 2023, Anderson has not made a request to observe a specific holiday that TDCJ does not already recognize for Sabbatarians.[30]

Anderson has not filed a response. He does not present any evidence that disputes Chaplain Dotson's affidavit that TDCJ already recognizes a Sabbatarian Holy Day in which Sabbatarians can choose to fast and that the Sabbatarian inmates who chose to fast on that day are given a meal to break their fast. Nor does he present any evidence that disputes Dotson's affidavit that he has several options in which to obtain TDCJ-approved religious food to break his fast or that he has the opportunity to request that other Sabbatarian holidays be considered as fasting holidays.

## 2.    Use of Copyrighted Materials

Anderson requests the use of copyrighted material.[31]

Hazelwood asserts that Anderson's request to use copyrighted religious material is moot because he already has access to these

---

[28]Id.

[29]Id.

[30]Id. ¶ 13.

[31]Complaint, Docket Entry No. 8, pp. 4, 7.

materials.[32]  In support of the motion, Chaplain Dotson testifies that he has personally escorted Anderson to review the religious materials in the Chaplain office library and the main gym at the Pack Unit.[33]  Chaplain Dotson testifies that if Anderson wishes to view the materials again, he needs to make a request and Dotson will provide him with access to the materials.[34]

Anderson has not filed a response.  He does not present any evidence that disputes Chaplain Dotson's affidavit that he has reviewed the copyrighted material in the past or that he has reason to believe that he will not be allowed to view the material in the future if he follows the proper channels.

### 3.   Use of a Shofar for Sabbath Services and Holy Days

Anderson requests the use of the shofar during Sabbath services and Holy Days.[35]

Hazelwood argues that Anderson's request that the ram's horn be blown during religious services and holidays is moot because this practice is already allowed for use in Sabbatarian services.[36]

---

[32]Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55, p. 7.

[33]Chaplain Dotson's Affidavit, Exhibit C to Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55-3, p. 3 ¶ 16.

[34]Id. at 3–4 ¶ 16.

[35]Complaint, Docket Entry No. 8, p. 7.

[36]Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55, p. 7.

In support of the motion, Chaplain Dotson testifies that Messianic Jews, who are a subgroup of Sabbatarians, have the opportunity to blow a ram's horn during their group services.[37] He states that the Sabbatarians may also request that the ram's horn be blown during their services.[38] Chaplain Dotson states that if such a request was made, he would work with the Sabbatarian coordinator to allow the Sabbatarian group an opportunity to hear the ram's horn during the services.[39] Dotson explains that when it is not in use, the ram's horn is kept locked up because of the potential security risks of it being used as a weapon.[40]

Anderson has not filed a response. He does not present any evidence that disputes Chaplain Dotson's Affidavit that if a Sabbatarian inmate requested that a ram's horn be blown during their services, such a request would be granted. Nor does he present any evidence that a Sabbatarian subgroup already has the opportunity to blow a ram's horn during their group services.

### 4. Lay-in for Holy Days

Anderson requests a lay-in for particular Holy Days — namely, Yahweh's Lunar New Moon, Day of First Fruits, Passover,

---

[37]Chaplain Dotson's Affidavit, Exhibit C to Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55-3, p. 4 ¶ 17.

[38]Id.

[39]Id.

[40]Id.

Unleaven[ed] Bread, Feast of Weeks, Pentecost/Shavuot, Tishrei, Feast of Trumpets, Feast of Tabernacles, and The Last Great Day.[41]

Hazelwood asserts that Anderson's request for lay-ins for particular Holy Days is moot because he already has the option to request a lay-in for Holy Days. In his affidavit, Chaplain Dotson explains that every year TDCJ publishes a document that lists all of the Holy/Observance Days for each religion that TDCJ recognizes.[42] If an inmate wants to observe a particular holiday that is recognized by TDCJ, then the inmate must request a lay-in.[43] Sabbatarian/Yahweist is a religion recognized by TDCJ.[44] TDCJ recognizes several Sabbatarian holidays that Sabbatarians can observe by requesting a lay-in for the holiday.[45] If an inmate wishes to observe a holiday that is not already recognized by TDCJ, then the inmate must make a request via a Request for Religious Accommodation form or HQ-150 form.[46] The unit's chaplain then forwards the form to the CVSD.[47] The CVSD reviews and researches

---

[41]Complaint, Docket Entry No. 8, p. 7.

[42]Chaplain Dotson's Affidavit, Exhibit C to Hazelwood's Motion for Partial Dismissal, Docket Entry No. 55-3, p. 3 ¶ 10.

[43]Id. An approved lay-in excuses an inmate from performing work or attending school so that the inmate may observe the holiday. See id. at 2 ¶ 4.

[44]Id. at 2 ¶ 5.

[45]Id. at 3 ¶ 8.

[46]Id. ¶ 12.

[47]Id.

-16-

the request, and then either approves or denies the request.[48] The CVSD informs both the chaplain and the inmate who made the request of the CVSD's findings.[49]

Chaplain Dotson testifies that since December of 2023 Anderson has not requested a lay-in to attend or participate in any of the Sabbatarian weekly services or Holy Days with the Sabbatarian group.[50] He further testifies that since he began working at the Pack Unit in September of 2023, Anderson has not made a request to observe a specific holiday that TDCJ does not already recognize for Sabbatarians.[51]

Anderson has not filed a response. He does not present any evidence that disputes Chaplain Dotson's Affidavit that TDCJ recognizes and allows lay-ins for several Sabbatarian holidays or that he is given the opportunity to request to observe a specific holiday that TDCJ does not already recognize for Sabbatarians.

For these reasons, Anderson's claims seeking fast days with a meal to break the fast, the use of copyrighted materials, the use of a shofar for religious services, and lay-ins for Holy Days will be dismissed without prejudice for lack of subject-matter jurisdiction under the mootness doctrine.[52]   See Turner, 836

---

[48] Id.

[49] Id.

[50] Id. ¶ 11.

[51] Id. ¶ 13.

[52] Claims dismissed for lack of subject-matter jurisdiction are dismissed without prejudice. See Mitchell v. Bailey, 982 F.3d 937, 944 (5th Cir. 2020).

F. App'x at 229 (affirming dismissal of an inmate's religious claim when TDCJ changed prison policy and the inmate had "received what he wanted"); Barker v. Collier, Civil Action No. 4:22-CV-02816, 2024 WL 169591, at *2 (S.D. Tex. Jan. 12, 2024) (dismissing request for injunctive relief as moot when the plaintiff "already has what he asks the Court to compel through an injunction"); Molinar v. Lumpkin, Civil Action No. 6:22-CV-00006, 2023 WL 6221786, at *3-4 (S.D. Tex. Sept. 23, 2023) (dismissing an inmate's claim to wear his hair in two braids as an expression of his religious faith when TDCJ changed policy and permitted the inmate the relief he sought).

## B.  Hazelwood's MSJ

In the motion for summary judgment, Hazelwood argues that other than submitting grievances requesting a seder meal and service during Passover[53] Anderson has not filed grievances regarding his other claims for relief.[54] She argues that Anderson's claims must be dismissed because he has failed to exhaust his administrative remedies prior to filing this lawsuit.[55]

The plaintiff's failure to exhaust administrative remedies is an affirmative defense.  See Jones v. Bock, 127 S. Ct. 910, 921 (2007); Herschberger v. Lumpkin, 843 F. App'x 587, 590 (5th Cir. 2021) (emphasizing that "the failure to exhaust administrative

---

[53]These claims were previously dismissed as moot in the court's Memorandum Opinion and Order of December 5, 2024.  (See Docket Entry No. 49, p. 26.)

[54]Hazelwood's MSJ, Docket Entry No. 56, pp. 6-7.

[55]See id. at 7.

remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal") (citations omitted).

This case is governed by the PLRA, 42 U.S.C. § 1997e(a), which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Because this requirement is mandatory, Anderson was required to exhaust administrative remedies before filing his lawsuit about the conditions of his confinement. See Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006) (citing Porter v. Nussle, 122 S. Ct. 983, 988 (2002)); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001); see also Jones, 127 S. Ct. 918-19 (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court") (citation omitted).

TDCJ has a formal two-step administrative grievance process. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. See id. at 515. If an inmate is not satisfied with the response to his Step 1 grievance, he then has 15 days to file a Step 2 grievance to appeal an unfavorable result at the state level. See Favela v. Collier, 91 F.4th 1210, 1212 (5th

Cir. 2024). A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. See id. Substantial compliance with this process is not enough to exhaust remedies under the PLRA. See Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion . . .") (citations omitted).

Anderson has not submitted any evidence that contradicts the summary judgment record submitted by Hazelwood that he did not complete both steps of the two-step TDCJ grievance process before filing suit in this case. As the Supreme Court has clarified, prisoners may not deliberately bypass the administrative process by flouting or failing to comply with an institution's procedural rules where the exhaustion of remedies is concerned. See Woodford, 126 S. Ct. at 2389. Because Anderson failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a), Hazelwood is entitled to summary judgment on Anderson's remaining claims seeking a cleansing shower on Sabbath and every Holy Day prior to religious services and a meal for Holy Days.

## C. The Claims Against TDCJ Executive Director Bryan Collier

Anderson has also sued TDCJ's Executive Director, Bryan Collier. The court did not order service on this defendant and instead examines whether the claims against this defendant are appropriately dismissed for failure to state a claim on which

-20-

relief may be granted under 28 U.S.C. § 1915.  See 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

In the pleadings, Anderson complains that Collier, as Executive Director of TDCJ (1) used "vague and unclear words" in his policies and procedures, which allows unit chaplains to use their discretion, and (2) gave Hazelwood "the option to Allow unit Chaplains the Ability . . . to decide on their own about special requests. . . .[56]

Supervisory officials can be held liable under § 1983 only if the plaintiff demonstrates:  (1) the supervisor's personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  See Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003); Gates v. Texas Department of Protective and Regulatory Services, 537 F.3d 404, 435 (5th Cir. 2008).  Anderson does not allege that Collier was personally involved in the constitutional deprivations asserted in his pleadings.

Instead, construing his claim liberally, it appears that Anderson claims that Collier is liable under § 1983 based on a failure to train or supervise.  Where a plaintiff asserts liability based on a failure to train or supervise, the plaintiff must show

_____

[56]See Complaint, Docket Entry No. 8, pp. 3-4; Plaintiff's MDS, Docket Entry No. 19, p. 14.

-21-

that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008) (citing Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005)) (internal quotation marks omitted). The Supreme Court has observed that "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citation omitted); see also Walker v. Upshaw, 515 F. App'x 334, 340 (5th Cir. 2013) (per curiam). "[A] showing of deliberate indifference requires that the Plaintiff[] show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." Walker, 515 F. App'x at 340 (internal quotation marks omitted). "It is well accepted that a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Connick, 131 S. Ct. 1350 at 1360) (internal quotation marks omitted). "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009) (quoting Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005)). "Without notice that a course of training is

-22-

deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Walker, 515 F. App'x at 340 (quoting Connick, 131 S. Ct. at 1360).

Anderson has not pleaded sufficient facts to support a finding of deliberate indifference by Collier. Notably, Anderson does not point to any examples of a pattern of similar constitutional violations; nor does he describe in sufficient detail how any training is deficient. Thus, his claim regarding Collier's failure to train must fail. See Speck v. Wiginton, 606 F. App'x 733, 736 (5th Cir. 2015) (per curiam) (holding that summary dismissal was appropriate on the pleadings because the plaintiff did not allege a pattern of similar violations to show deliberate indifference and plaintiff's fact pattern did not support the rare "patently obvious" exception); Edwards v. Oliver, No. 3:17-cv-01208-M-BT, 2019 WL 4603794, at *6 (N.D. Tex. Aug. 12, 2019) (holding dismissal on the pleadings was appropriate because the plaintiff had not alleged facts to show a pattern of similar violations), report and recommendation adopted by, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019). Accordingly, Anderson's claim against Collier must be dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.  **Conclusion and Order**

Based on the foregoing, the court **ORDERS** as follows:

1.   Defendant Hazelwood's Motion for Partial Dismissal of Case as Moot Pursuant to Federal Rule of Civil

-23-

Procedure 12(b)(1) (Docket Entry No. 55) is **GRANTED**. Anderson's claims seeking fast days with a meal to break the fast, the use of copyrighted materials, the use of a shofar for religious services, and lay-ins for Holy Days are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction under the mootness doctrine.

2. Defendant Hazelwood's Motion for Summary Judgment Limited to the Defense of Exhaustion of Administrative Remedies (Docket Entry No. 56) is **GRANTED**. Anderson's claims seeking a cleansing shower on Sabbath and every Holy Day prior to religious services and a meal for Holy Days are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act.

3. Anderson's claims against defendant Bryan Collier are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.

**SIGNED** at Houston, Texas, on this the 3rd day of July, 2025.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE